STATE, Respondent, v. CARLISLE, Appellant.

(139 N. W. 127.)

1.  **Criminal Law—Information—Motion to Set Aside Information.**
    That the complaint filed with committing magistrate was made by a person having no knowledge of the facts set forth therein is not ground for setting aside the information; no such ground being recognized by Sec. 263, Code Crim. Proc., as a basis for setting aside an information.

2.  **Criminal Law—Requisites of Information—"Peace and Dignity" —Prejudicial Error.**
    That the phrase "against the peace and dignity of the State of South Dakota" occurs in the body instead of at the conclusion of an information, does not render it defective, in view of Sec. 219, Code Crim. Proc., providing in substance that that Code prescribes all forms and rules of criminal pleadings, and of Secs. 221 and 229, relative to contents of indictments and informations. That such phrase did not occur at the conclusion of the information was a defect not tending to prejudice substantial rights of accused on the merits, and hence did not affect the sufficiency of the information.

3.  **Criminal Law—Information, Form of—Not a "Process"—Constitutional Provisions.**
    An information is not a "process," within Constitution, Art. 5, Sec. 38, requiring all processes to run in name of State of South Dakota.

4.  Criminal Law—Information—Recital of Authority in—Authority Through State's Attorney.

    Under Const., Art. 5, Sec. 38, it is not necessary that an information should recite that the prosecution is by authority of the State of South Dakota, if the record shows that such prosecution is so conducted. Held, further, that a recital therein that the state's attorney of a county, in name and by authority of State of South Dakota, informs, etc., sufficiently shows the prosecution to be by such authority, if such recital is necessary.

5.  Criminal Law—Information—Crimes—Series of Acts.

    An information for an offense consisting of a series of acts, such as the practice of dentistry, need not specifically describe the various acts constituting the series.

6.  Statutes—Titles to—General Subject—Constitutional Requirements.

    Under Laws 1909, ch. 4, entitled "An act to provide for state board of dental examiners, to insure the better education of practitioners of dental surgery and to regulate the practice of dentistry in the State of South Dakota," the provisions of said act imposing penalties for its violation, are germane to the title, the title expressing a general subject or purpose, and such penal provisions being reasonably connected therewith; hence that act does not violate Const., Art. 3, Sec. 21, concerning titles to laws.

7.  Criminal Law—Information—Former Conviction—Identity of Offenses.

    An information for practicing dentistry without license during January, February and March, 1912, which, for the purpose of having the punishment for a second offense imposed, alleges a conviction in September, 1910, for a violation during December, 1909, and January, 1910, does not show, on its face, that the prosecution is barred by the former conviction; it affirmatively appearing therefrom that the series of acts involved in former prosecution are not the same as those involved in present action.

8.  Criminal Law—Continuance—Grounds—Diligence— Incompetent Evidence—Abuse of Discretion.

    An affidavit for continuance of a trial on May 17th, under an information filed April 29th, alleged that a necessary witness had broken his arm and left the state, and had sent to accused the affidavit of a physician as to his then condition; that he was beyond jurisdiction of court, and accused could not obtain his appearance at that term, that there had not been time within which to take his deposition, but that accused believed he could procure his attendance and procure his evidence at next term. The physician's affidavit did not appear in statement of facts on appeal. Held, it not appearing that witness

was unfriendly to accused, that the court did not abuse its
discretion in denying the continuance, since it did not appear
that witness was unable to return for the trial, or that his depo-
sition could not have been obtained, it not appearing when he
left the state, especially in that witness' testimony would have
been incompetent, and other witnesses were present who offer-
ed to testify to same facts.

**9.   Criminal Law—Evidence—Review—Harmless Error.**

Whether the admission of statutory documentary evidence was
erroneous was immaterial, where the fact sought to be establish-
ed thereby was conclusively established by other competent, un-
contradicted evidence.

**10.  Dentistry—Practicing Dentistry Without License—Evidence—
Corporate Articles and By-Laws.**

In a prosecution for practicing dentistry without license, under
Laws 1909, ch. 4, Sec. 6, which excludes from its provisions
students enrolled in and regularly attending a dental college,
who perform acts of dentistry in pursuit of clinical advantages
under direct supervision of a preceptor or licensed dentist,
there being no other evidence that any persons other than
accused and his wife had ever been enrolled as students in
an alleged college, that it had never been advertised as a
college, or that any person had ever received instruction as a
student in connection therewith, **held,** the articles of incorpora-
tion and by-laws of such alleged college were properly ex-
cluded; the existence of the corporation being neither essential
to or evidence of existence of a college, therefore it was not
necessary or proper to inquire into the motives prompting the
incorporation.

**11.  Same—Supervision of Licensed Dentist—Enrolled Student.**

Under Laws 1909, ch. 4, Sec. 6, the fact that acts of den-
tistry in pursuit of clinical advantages under supervision of a
preceptor or licensed dentist were performed by accused, is no
defense, unless he were at the time a student enrolled in and
regularly attending a dental college.

**12.  Criminal Law—Instructions—Dental Student—Evidence to Sus-
tain Instruction.**

In a prosecution for practicing dentistry without license,
under Laws 1909, ch. 4, Sec. 6, excepting from its provisions
students attending a dental college, etc., where there was no
evidence offered on either side as to attending a dental college,
**held,** not error to refuse to charge that accused could not be
convicted for any period during which he was enrolled as a
student, since the burden was on defendant to produce evidence
raising this issue, the exception pertaining to enrolled students
having been duly negatived in the information, and the subject-

matter of such negative averment being peculiarly within accused's knowledge.

**13.  Criminal Law—Information—Negative Averments—"Burden of Proof."**

When the subject-matter of a negative averment in an indictment or information, relied on by defendant as justification or excuse,' lies peculiarly within his knowledge, the burden of proof as to such justification or excuse is on him; but the "burden of proof" in this connection does not mean the quantom of evidence necessary to establish the truth of a proposition or issue, but merely the duty of producing some evidence to meet a prima facie case.

**14.  Criminal Law—Question for Jury—Question for Court.**

While, under Code Crim. Proc.; Sec. 354, concerning decisions of questions of fact and of law, although the jury may find a general verdict involving questions of law as well as of fact, they must receive as law what is laid down as such by the court; and, held, that while it is the jury's province to determine whether the required facts have been established, it is for court to determine what facts constitute the crime charged, by what evidence such facts may be established, and what issues shall be considered.

(Opinion filed December 14, 1912.)

Appeal from Circuit Court, Minnehaha County. Hon. ROBERT B. TRIPP, Judge.

The defendant, C. L. Carlisle, was convicted of practicing dentistry without a license, and he appeals.    Affirmed.

See, also, 22 S. D. 529, 132 N. W. 686.

*Sam H. Wright,* for Appellant.

This assignment presents a question which has never been passed upon by the Supreme Court of this state, so far as my investigation goes.    To epitomize the point it is this:    Whether or not a person who is not a competent witness can make the moving complaint, upon which an information can be filed by a state's attorney, in the absence of thereafter an indictment has not been found by a grand jury.    Following this thought up, we challenged the qualifications of the complaining witness, Lanning, to make the initial affidavit or complaint, and this challenge was never met by the state.    Had an indictment been based upon the testimony of said Lanning by a grand jury, since he was an absolutely incompetent witness, it would have been the duty of the trial court upon the showing made by the defendant, to set aside

the indictment, and having failed so to do there is error touching this proposition.

In support of this contention see Criminal Procedure, Sec. 188 (S. D.); State v. Houston, 50 Iowa, 512; People v. Briggs, 60 Howard Practice, 17 (N. Y.); Thomas v. State, 14 Tex. App. 70; State v. Tankersly, 6 Lea 582, 5 S. E. 407, 47 Pac. 1083; State v. Lloyd, 3 S. W. 670.

Moreover, section 208 of our Criminal Procedure should be conclusive on this point, since the withdrawal or abolishment of the right, which was an inherent one, to have the crime charged against him first investigated by a grand jury, when the same was swept aside by legislative enactment, will and should be closely watched and safeguarded. Short v. White Lake Township, 8 S. D. 148.

The court erred in overruling the demurrer of the defendant for and upon the grounds therein set forth.

I. shall content myself by referring to the title of chapter 4 of the Laws of 1909, the same reading as follows: "An act to provide for a state board of dental examiners; to provide for the better education of practitioners of dental surgery and to provide for the practice of dentistry in the state of South Dakota."

Now, there is nothing whatever in the title of this act pointing out anything except the "better education of practitioners of dental surgery and the practice of dentistry in the state of South Dakota." Not a word is said regarding penalties, nor the methods to be pursued before obtaining a license. This being so, how can your honors reconcile your opinion in the Pierson case without sustaining my contention in the present one?

Regarding subdivision 3 of the demurrer, I do not see how this court can do otherwise than sustain the same, the law being too clear for any other interpretation. "All provisions of law applying to prosecutions upon indictment, etc., * * * shall in the same manner and to the same extent and as near as may be, apply to informations and all prosecutions and proceedings thereon. Crim. Pro., section 208.

Conclusion of indictment or information.

"At common law and in the absence of a statute to the contrary, every indictment, whether at common law or under a statute * * * must after the charging the offense, allege by a formal

conclusion that it was 'against the peace of the state' or 'of the commonwealth' or 'the people of the state' or 'of the United States,' etc. * * *. This is absolutely essential at common law. * * * The words 'against the peace,' omitting 'of the state,' held insufficient." See 22 Cyc., p. 243.

"And the same must also conclude 'against the form of the statute in such case made and provided. In the absence of a statute dispensing therewith such a conclusion is necessary while the offense is created solely by statute and does not exist at common.'" . Id. pp. 245-7.

In the present case, while the immediate charge contains the said concluding words, that portion of the information which undertakes to charge a second offense utterly fails so to do, and that is a most important as well as most serious part of the charge.

Again, our Constitution, article V, section 38, expressly provides: "All process shall run in the name of the 'state of South Dakota.' 'And all prosecutions shall be carried on in the name of and by authority of the state of South Dakota.'" State v. Hasledahl, 52 N. W. 315 (N. D.).

The original complaint in this case utterly fails to comply with the mandatory provisions of the Constitution and the same is therefore faulty. Compliance with this requirement is essential. See note 67, 22 Cyc., p. 241.

And the same criticism applies with equal force to the information filed in the circuit court, they being as before stated identical in phraseology in said respect.

Wherever a series of acts amounting to a practice or occupation constitutes the offense, whether alleged as continuing or as committed on a single day, time is of the essence of the charge, which will not be sustained by a proof varying from it in any degree in date. C. v. Gardner, 7 Gray, 494; C. v. Adams, 4 Gray, 27, 28; C. v. Pray, 13 Pick. 359, 364; C. v. Briggs, 11 Met. 573; C. v. Elwell, 1 Gray, 463. And, see, Dansey v. S., 23 Fla. 316; C. v. Elwell, supra; C. v. Gardner, supra; C. v .Traverse, 11 Allen, 260.

The witnesses must be competent, not alone generally, but to testify in a particular matter. State v. Houston, 50 Iowa, 512; People v. Briggs, 60 Ho. Prac. 17; Thomas v. State, 14 Tex.

App. 70; State v. Tankersly, 6 Lea 582, 5 S. E. 407; State v. Lloyd, 3 S. W. 670; Hughes Crim. Law and Pro., Secs. 257-60.

The grand jury can receive none but legal evidence and the best evidence in degree to the exclusion of hearsay or secondary evidence, Crim. Pro., section 188.

All provisions of law applying to prosecutions upon indictment, etc., * * * shall in the same manner and to the same extent and as near as may be, apply to informations and all prosecutions and proceedings thereon. Crim. Pro., section 208.

The affidavit or complaint must be made by a competent person. Thomas v. State, 14 Tex. App. 70.; Com. v. Gardner, 7 Gray (Mass.) 494, (holding that a charge that defendant was a common seller of intoxicating liquors on a day specified, "and on divers days since,", was insufficient to admit proof of acts on other than the day specified) ; and, see, Com. v. Adams, 4 Gray (Mass.) 27; Com. v. Sullivan, 5 Allen (Mass.) 511; Com. v. Briggs, 11 Metc. (Mass.) 573; see infra. XI., C. 4, text and note 76; State v. O'Donnell, 81 Me. 271, 17 Atl. 66; State v. Small, 80 Me. 452, 14 Atl. 942; Shorey v. Chandler, 80 Me. 409, 15 Atl. 223; State v. Beaton, 79 Me. 314, 9 Atl. 728; Wells v. Com., 12 Gray (Mass.) 326; see, also, Collins v. State, 58 Ind. 5.

The phrase "divers and sundry days" may be rejected as surplusage. Wood v. Allen, 8 S .D. 622; State v. Houghner, 5 S. D. 461, 7 Id. p. 103; State v. Terry, 19 S. W. 206.

Having stated different times the state should be forced to elect upon what day it would base its demand for conviction. State against Boughner, 7 S. D. 103.

The common law will be looked to in the absence of statutory provisions. State v. Severine, 2 S. D. 241.

Certificate not admissible—Bill of Rights, Art. 6, Sec. 7.

The demurrer. See State v. Clark, 119 N. W. 720 (Ia.), Division 2; Evans v. U. S. 153 U. S. 587, 14 Sup. Ct. 936; U. S. v. Tubbs, 94 Fed. Rep. 356.

Subdivision 5 of the demurrer brings up for consideration the old fundamental principle that a person charged with a public offense is entitled to be fully informed thereof—that is, the facts pertaining thereto should be set forth with such certainty as that

he may be enabled to meet and confront the same. Sec. 7, Art. VI, Bill of Rights.

How could this defendant know the specific nature of the offense charged against him under the information which he was called upon to answer? This interrogation becomes of especial importance by reason of the qualifying provisions of the act of the Legislature under which he was informed against. How could he anticipate when no names of persons operated upon nor the dates of such operations were given so as to bring himself within the exceptions of the statute? The Constitution, both of the United States and of all the states, bearing upon the immediate subject go back to the first principles of Magna Charta, and no legislature, either national or state, can determine it.

Regarding the 6th subdivision of the demurrer, a portion of the same time embraced in the prosecution was embraced in that of the former one, and, therefore, as a matter of course, the defendant has been placed in jeopardy the second time for a part of the same offense, and, this being so, I insist that the court had no right to proceed against him in the present case. I shall not undertake to cite authorities on this point, because it is basic in principle and requires, owing to the statement I have made, to carry with it the mind of every member of this court its self-evident and unanswerable argument.

Referring to the affidavit of the defendant for a continuance in which he set forth the fact that he could show by the evidence of Dr. Cannon that all of the work done or performed in connection with the charge of violation of law was done under his (Dr. Cannon's) jurisdiction and under his direction in the premises, and especially as supported by the affidavit of C. M. Ketcham, said affidavits appearing on pages 68-70 of the record.

This court, in the case of the State against Wilcox, 21 S. D. 532, has settled the point in question, especially when the entire record in this case is considered and applied. There can be no controversy about the fact that all the work of a dental character performed by the appellant was done under the direct tutelage of Dr. Cannon. The record furthermore says that Dr. Cannon was a duly admitted dentist under chapter 4 of the Laws of 1909 of this state.

That any legislature can by enactment render admissible the

records of any board of dental examiners or any other board admissible against any citizen it is impossible for me to conceive of. Kirby v. U. S., 174 U. S. 47, 43 L. C. P. 80.

The Legislature having, by an act of prohibition so to speak, excluded any person from performing any act of dentistry except as he or she might be included in the exception mentioned in the statute, and this defendant having shown or proposed to show as disclosed on page 43 and that he was an enrolled student as described in said chapter 4 of Laws of 1909, and his record disclosing all of these facts, did the trial court have a right to take away from the jury the trial of the fact involved therein? Of course, in the trial of a criminal action the plea of not guilty puts in issue every fact that may exist in connection therewith. The record in this case discloses that we entered a plea of not guilty. This, then, entitled us to introduce in evidence any legitimate evidence to sustain our said plea. The trial court denied our right to present for the consideration of the jury the exceptional protection laid down by an arbitrary statutory provision. Our position on this line is this: The good faith of the establishment of the Carlisle Dental College and Institute was purely a matter for the jury, and no court, either state or national, had any right to invade its province.

Royal C. Johnson, Attorney General, M. Harry O'Brien, Assistant Attorney General, Martin Bergh, State's Attorney, and Bailey & Voorhees, for Respondent.

There is nothing in this record to show that the complaining witness did not have positive knowledge of all the allegations in this complaint. In any event, where the complaint is sworn to positively, it is immaterial that the prosecuting witness had no positive knowledge. City of Holton v. Bimrod, (Kan.). 58 Pac. 558; State v. Crombie, (Minn.) 119 N. W. 658; State v. Longstreth, 121 N. W. 1114.

The next assignment of error is predicated upon the ruling of the trial court in denying appellant's motion to quash the information.

It was a most unusual and unheard of practice to permit the defendant, in aid of his motion to quash, to examine this witness for the purpose of showing that he verified such complaint without having personal knowledge of the facts therein positively alleged.

If such practice should be tolerated, many guilty persons would go unpunished. No authority for such practice has been cited and we believe none exist. Cases where the complaint alleging facts merely on information and belief, or where such complaint is verified merely on information and belief, are not in point. Here the facts were positively alleged and positively verified. This was sufficient under all the authorities. State v. Collins, 8 Kan. App. 398, 57 Pac. 38; Alderman v. State, 24 Neb. 97, 38 N. W. 36; State v. Stoffel, 48 Kan. 364, 29 Pac. 685; People v. Staples, 91 Cal. 23, 27 Pac. 523; Com. v. Mallini, 214 Pa. 50, 63 Atl. 414; State v. Etzel, 2 Kan. App. 673, 43 Pac. 798. Another and complete answer to such contention is the fact that no such ground for quashing the information is mentioned in the Code. Section 9891, Rev. Codes 1905, states the grounds upon which such motion may be made, and this section is exclusive. State v. Tough, 12 N. D. 425, 96 N. W. 425; State v. Foster, 14 N. D. 561, 105 N. W. 938

The title of Chapter 4 of the Laws of 1909 under which the prosecution is brought is as follows:

"An act to provide for state board of dental examiners, to insure the better education of practitioners of dental surgery and to regulate the practice of dentistry in the state of South Dakota."

An examination of this court's language in the Pierson case, 134 N. W. 212, will show that that case is no precedent for appellant's contention. This title certainly does not embrace more than one subject. It is not necessary for the title to refer to a penalty for violating the law. The requirements regarding the subject of the act as expressed in the title should be reasonably construed considering substance rather than form. The title should express the general object of the act but not the details or incidents or means of effecting the object sought. The subject of penalties for violating the act is incidental to the act itself. Morrow v. Wipf, 22 S. D. 146, 115 N. W. 1121; Stephens v. Jones, 24 S. D. 97, 123 N. W. 705; State ex rel. Poole v. Peake, 18 N. D. 101, 120 N. W. 47.

A construction consistent to the Constitution will be given if possible. In re Watson, 17 S. D. 486, 97 N. W. 463.

The title to an act should be liberally construed and the conflict with the constitutional provision must appear to be clear and

palpable, and in case of doubt whether the subject is expressed in the title, the law will be upheld. State ex rel. Erickson v. Burr, 16 N. D. 131, 17 N. W. 1705; Hartford Fire Insurance Company v. Raymond, (Mich.) 38 N. W. 474; Republic Iron and Steel Company v. State, (Ind.) 66 N. E. 1005; Isenhour v. State, 157 Ind. 517, 523, 62 N. E. 40, 87 Am. St. Rep. 228; Lewis v. State, 148 Ind. 346, 47 N. E. 675; Benson v. Christian, 129 Ind. 535, 29 N. E. 26; Indianapolis v. Huegele, 115 Ind. 581, 18 N. E. 172; In re Terrett, (Mont.) 86 Pac. 266; State v. Bush, 45 Kan. 138, 25 Pac. 614; State ex rel. Green v. Power, (Neb.) 88 N. W. 769; State v. Koshland, (Ore.) 35 Pac. 32; David v. Portland Water Committee, 14 Ore. 98, 12 Pac. 174; State v. Merchant, (Wash.) 92 Pac. 890.

Appellant next insists that neither the complaint nor the information concludes "against the form of the statute in such case made and provided and against the peace and dignity of the state," and that, therefore, this prosecution is not carried on in the name of and by the authority of the state of South Dakota. This phrase above quoted instead of being placed at the end of the information was placed at the close of the first paragraph or at the end of that part of the information which charges the offense. The second paragraph of the information sets forth the commission of a previous offense by appellant, and alleges that by reason of the commission of the offense alleged in the first paragraph, appellant is guilty of a second offense under this statute. The statute provides an increased penalty for second and third offenses. We contend that this concluding phrase, "against the peace and dignity of the state, etc.," was placed where it ought to appear in the information, neither is it necessary to repeat this phrase at the close of the information for the reason that the second paragraph does not charge the offense upon which the appellant is to be tried but simply contains information to govern the court in inflicting punishment. The rule is that the allegation of a former conviction is not any part or ingredient of the offense charged, but is a matter which pertains only to the infliction of punishment. State v. Bloomdale, (N. D.) 128 N. W. 682.

In Reg. v. Clark, Dears 198, it was held: "A statement of a previous conviction does not charge an offense. It is only the averment of a fact which may affect the punishment. The

jury do not find the person guilty of a previous offense. They only find that he was previously convicted of it as an historical fact."

In People v. Fowler, 88 Cal. 136, the court says: "The fact that the concluding words of the information, 'against the form of the statute, etc.,' are placed after instead of before the charge of prior conviction is immaterial, the misplacement being a mere matter of form not tending to the prejudice of any substantial right of the defendant." People v. O'Brien, 64 Cal. 53.

Another point urged by appellant in his demurrer is that the information fails to state facts necessary to constitute a complete offense and to disclose to appellant the nature of the charge against him with certainty, and that it should set forth the particular circumstances concerning the commission of the offense, giving the dates, names of persons treated, etc. Your Honors will recall that in the previous case against this same appellant, reported in 132 N. W. 686, the information set forth the names of the persons upon whom appellant had been practicing dentistry, the times when the acts of dentistry had been performed, and described the nature of these various acts. Appellant's counsel in that case urged very strenuously that the information was duplicitous for the reason that it charged more than one offense. The same counsel now urges that because this information does not contain the statements which he objected to in the information in the previous case it fails to state an offense. In other words he now objects to this information on the ground that the state has not done what he objected to in the information in the former case.

An information need not allege the names of the persons upon whom the accused practiced dentistry unlawfully nor the precise character or nature of the operation or work. State v. Doerring, (Mo.) 92 S. W. 489; State v. Crombie, (Minn.) 119 N. W. 658; White v. La Peer Circuit Court Judge, (Mich.) 94 N. W. 601; People v. Phippin, (Mich.) 37 N. W. 888; State v. Van Doran, (N. Car:) 14 S. E. 32; State v. Martin, (R. I.) 49 Atl. 497.

This information charges the practice of dentistry without a license in the language of the statute and is, therefore, sufficient. State v. Littooy, (Wash.) 100 Pac. 170; State v. Crombie, (Minn.)

119 N. W. 658; Parks v. the State, (Ind.) 64 N. E. 862; State v. Edmunds, (Iowa), 101 N. W. 431.

Appellant complains because the court refused his application for a continuance. This application was based upon an affidavit of appellant himself and of one C. M. Ketcham, a physician, which appear on pages 68 and 70 of the record. The application was denied presumably because these affidavits were insufficient and did not show good faith or that appellant had used due diligence in procuring the presence of his witness, Cannon, or getting his deposition. A continuance in a criminal case, the same as in a civil case, is within the discretion of the court and its decision will not be reversed except for cogent reasons. State v. Phillips, 18 S. D. 1; Gaines v. White, 1 S. D. 431, 47 N. W. 524; Musgrove v. Perkins, 9 Cal. 212; Stone v. R. Co., 3 S. D. 330, 53 N. W. 189; Pierie v. Berg, 7 S. D. 578, 64 N. W. 1130; Live Stock Company v. Burris, 10 S. D. 430, 73 N. W. 919; Hood v. Fay, 15 S. D. 84, 87 N. W. 528; 4 Ency. Pl. and Pr. 827; State v. Wilcox, 21 S. D. 532; State v. Brandell, 26 S. D. 642.

There is no showing of reasonable certainty that appellant would secure the presence of the witness, Cannon, at the next term of court. It was evident that appellant made no showing of due diligence such as the law requires upon an application for a continuance.

Appellant claims the court committed error in admitting in evidence respondent's Exhibit "C" which appears on page 49 of the record, the same being the certificate of the secretary of the state board of dental examiners which states in substance that appellant is not and never has been licensed to practice dentistry in this state.

There was plenty of other competent evidence in the case to prove that appellant was not licensed to practice dentistry at the time of the commission of the acts charged in the information and never had been licensed. Dr. Revell, the secretary, produced and identified the records of the state board of dental examiners containing a list of all the licensed dentists, which book was offered in evidence, and he testified that the name of appellant was not to be found in that book. It was not incumbent upon the state to prove that appellant at the time of the commission of the acts charged in the information was not a licensed dentist. The

burden of proving that he had a license was upon appellant as this is a defense peculiarly within his own knowledge. Kettles v. People, (Ill.) 77 N. E. 472; People v. Boo Doo Hong, (Cal.) 55 Pac. 402; People v. Fortch, (Cal.) 110 Pac. 823; State v. Wilson, (Kan.) 64 Pac. 23.

The real defense relied upon by appellant in this action is the provision of section 6 of chapter 4 of the Laws of 1909, excepting from the operation of this section "students enrolled in and regularly attending any dental college, who perform acts of dentistry in the pursuit of clinical advantages under the direct supervision of a preceptor or a licensed dentist during the period of their enrollment." Appellant's defense which he sought to make was that he was a student in the Carlisle Dental College & Institute at the time of the performing of the various acts of dentistry alleged in the information and proven upon the trial, and that these acts of dentistry were performed in such college under the direct supervision of one F. W. Cannon, who was preceptor of appellant and a licensed dentist.

He was arrested and tried for this offense in the county court of Minnehaha county and convicted in September, 1910, appealing from said conviction, upon which appeal this court rendered a decision affirming in all respects the judgment and conviction in said county court, which opinion is reported, as stated above, in 132 N. W. at page 686, the opinion being handed down on October 4, 1911, and rehearing denied in December, 1911. There being no other possible way for appellant to avoid the operation of this law, he associated with himself one F. W. Cannon, who was then practicing dentistry in Sioux Falls, and organized a corporation known as the Carlisle Dental College & Institute of Sioux Falls, South Dakota, in December, 1911.

There is nothing in this record to show that this Carlisle Dental College & Institute was anything more than a fake and a deliberate attempt on the part of appellant to evade the operation of this law. It was not in any sense a school or college and appellant and his wife were not in any sense students in a school or college. We concede that Cannon had a license, but if he supervised appellant's work the supervision was very perfunctory. Evidence that Cannon had a license and supervised appellant's work would be no defense without a further showing that the

Carlisle Dental College & Institute was a bona fide college, and that appellant was in fact a student. ..

HANEY, J.   The defendant, having been convicted of practicing dentistry without a license, removed the record of such conviction to this court for review by an appeal from the judgment of the circuit court and its order denying the defendant's application for a new trial.

[1] Upon being called to plead, the defendant moved the court to set aside the information, for the reason that the complaint filed with the committing magistrate was made by a person who was not personally cognizant of any fact set forth therein, supporting such motion by the affidavit of the defendant to the effect that the person who swore to the complaint did not set forth therein any fact within his personal knowledge, or to which he could testify as a witness.   This motion was properly overruled. It presented no ground for setting aside the information recognized by the statute.   Rev. Code Crim. Proc. § 263  State v. Bank, 2 S. D. 538, 51 N. W. 337; State v. Bank, 3 S. D. 52, 51 N. W. 780; State v. Tough, 12 N. D. 425, 96 N. W. 1025; State v. Foster, 14 N. D. 561, 105 N. W. 938.

[2, 4] A demurrer to the information, alleging numerous defects, was overruled.   It will be assumed that these alleged defects are embraced by the statutory grounds (1) that the information does not substantially conform to the requirements of the Code of Criminal Procedure, (2) that the facts stated do not constitute a public offense, or (3) that the information contains matter which, if   true, would constitute a legal bar to the prosecution.   Under the first ground it is urged that the information is defective, for the reason that the phrase "against the peace and dignity of the state of South Dakota" occurs in the body of the information and not at its conclusion.   The contention is untenable.   In this state all the forms of pleading in criminal actions, and rules by which the sufficiency of pleadings is to be determined, are those prescribed by the Code of Criminal Procedure.   Rev. Code Crim. Proc. § 219.   Such rules do not require the use of the phrase in any part of an information or indictment.   Id. §§ 221, 229. State ex rel. v. Swenson, 18 S. D. 196, 99 N. W. 114.   And if such phrase was required its position in this information would be a defect or imperfection of form, which could not tend to the

prejudice of the substantial rights of the defendant upon the merits, and therefore should not be allowed to affect the sufficiency of the pleading. Rev. Code Crim. Proc. § 230. Attention is called to section 38, art. 5, of the state Constitution, which provides: "All process shall run in the name of the 'State of South Dakota.' All prosecutions shall be carried on in the name, and by authority, of the 'State of South Dakota.'" The first provision has no application to an information. An information is not "process," within the meaning of such provsion. Nor has there been any violation of the second provision in this instance. It is not essential that an information shall contain a recital, in terms, that the prosecution is by authority of the state. "It is sufficient if the record shows that the prescution is so conducteu. State v. Thompson, 4 S. D. 95, 55 N. W. 725. Moreover, the state is named as party plaintiff, and the information has this recital: "Martin Bergh, state's attorney of Minnehaha county, in the Second judicial circuit of the state of South Dakota, duly and legally elected, qualified, and acting according to law, in the name of, and by authority, of the state of South Dakota, upon his oatu, informs the court"—followed by a statement of the facts constituting the offense charged, and facts intended to show a second violation of the statute.

[5] It is contended that the information is not sufficiently direct and certain as to the circumstances ofthe offense charged, in that it does not state the names of the persons treated and the date of each treatment. The contention is not tenable. The distinction between an information which charges an offense consisting of a single transaction and one which charges an offense consisting of a series of acts has been recognized by this court. Where one transaction, as one sale of intoxicating liquor, constitutes the crime charged, it has held that the name of the purchaser must be stated. State v. Burchard, 4 S. D. 548, 57 N. W. 491. But whenevr the crime consists of series of acts, such as engaging in the business of selling without a license, each act need not be specifically described; for it is not each, or all the acts of themselves, but the practice or habit, which constitutes the offense. State v. Williams, 11 S. D. 64, 75 N. W. 815. The case at bar is clearly within the reason of the latter rule. "Where the

reason is the same, the rule should be the same." Rev. Civil Code, § 2409.

[6] There is no merit in the claim that the information fails to state a public offense, because the act upon which the prosecution is based violates section 21, art. 3, of the state Constitution: "No law shall embrace more than one subject, which shall be expressed in its title." The specific objection to the act is, as we understand the argument of counsel, that the penalties prescribed therein are not germane to its title. The title of chapter 4, Laws 1909, is as follows: "An act to provide for state board of dental examiners, to insure the better education of practitioners of dental surgery and to regulate the practice of dentistry in the state of South Dakota." The general subject, or purpose of the act, as fairly indicated by the language of the title, is the regulation of the practice of dentistry. "When the title of a legislative act expresses a general subject or purpose which is single, all matters which are naturally and reasonably connected with it, and all measures which will, or may, facilitate the accomplishment of the purpose so stated, are germane to its title." State v. Morgan, 2 S. D. 32, 48 N. W. 314. Clearly penalties for the violation of any prescribed regulations are germane to such regulations; are, indeed, necessary to accomplish the purpose for which the regulations are prescribed.

[7] The information charges that the defendant was engaged in the unlawful practice during the months of January, February, and March, 1912. It also alleges facts showing a conviction on September 1, 1910, upon an information charging a violation of the law upon which the present prosecution is based, during the months of December, 1909, and January, 1910, for the purpose of having the punishment for a second offense imposed. Assuming the question to be properly raised by demurrer, the contention is not tenable that it appears, on the face of the information, that the present prosecution is barred by the former conviction; for the obvious reason that the period covered by the present charge is alleged to have begun on a date subsequent to the date of the former conviction; it affirmatively appearing that the series of acts involved in the former prosecution are not the same as those involved in the present action.

[8] There was no abuse of discretion in denying defendant's application for a continuance until the next term. He states in his affidavit: "That since the information in the above-entitled action was filed F. W. Cannon (a resident of said county and state), who is a necessary and material witness for my defense therein, having broken one of his arms, without my knowledge, consent, or procurement, has left said county and state and gone to the home of his parents in Jasper county, in the state of Missouri ,and that he has sent me through the mails the affidavit of C. M. Ketchum, M. D., which is marked 'Exhibit A, and made a part of this affidavit, which discloses the present condition of the said Cannon. That said Cannon is beyond the jurisdiction of this court, and I am unable to obtain his appearance at the present term thereof. That since learning of the fact that said Cannon had left this jurisdiction I have not had time to take his deposition, but have every reason to believe that I can procure his personal presence at the next term of this court and produce his evidence if a postponement or continuance of said action can be had. That the said Cannon had faithfully promised to be present and testify in my behalf upon the trial of this action, and his failure to do so is a complete surprise, and that, as hereinbefore stated, the evidence of said Cannon is material, necessary, and vital to my defense in the premises. * * * Affiant further says that said Cannon knows the facts to be that all the treatments of a dental character between the 1st day of September, 1911, and the filing of this information against affiant with which he is charged with performing were performed under his supervision, direction, and control, as hereinbefore stated, and that said Cannon would testify upon the trial that all treatments of each and every witness whose name is indorsed on the information herein was under his direct supervision and direction, and also that all other treatments made, used, or administered to any other person by this affiant was under his direct control, supervision, and tutelage. Affiant further says that there is ,no other pedson by whom he can establish the facts set forth in this affidavit save and except the said Cannon." Exhibit A does not appear in the appellant's "statement of facts." In absence of such affidavit, this court should not presume that a broken arm was, in itself, a sufficient reason for Cannon's absence at the time of the trial, if he desired

to be present; and nothing in the record justifies the inference that he was unfriendly to the accused. If, as appears from the defendant's affidavit, Cannon was able to go from Sioux Falls to Missouri, the inevitable inference is that he was able to return, in absence of any evidence to the contrary. It appearing that the information was filed in the circuit court April 29, 1912, and that the trial did not occur until May 17, 1912, there was ample time within which to have secured Cannon's deposition; it appearing that the relations of the accused and the witness were friendly, and it not appearing when the witness departed for Missouri. Furthermore, it affirmatively appears that the defendant was not prejudiced by the denial of his application, as other witnesses were present who could and did offer to give the same testimony as that of the absent witness and the latter's testimony would not have been received had he been present.

[9] The statute provides that a certificate of the secretary of the board of dental examiners, stating that any person is or is not a legally licensed or registered dentist, under the seal of the board, shall be prima facie evidence in all courts of the state of the facts therein state, without further authentication. Laws 1909, c. 4, § 3. Such a certificate was received over the objection that the provision of the statute, if applicable to criminal actions, conflicts with the constitutional right of one accused of crime "to meet the witness against him face to face." Const. art. 6, § 7. Whether there was error on this ground need not be determined, for the reason that the fact stated in the certificate was conclusively established by other competent, uncontradicted evidence.

[10] Secion 6, Laws 1909, reads as follows: "Any person shall be said to be practicing dentistry within the meaning of this act, who shall hold himself out before the public as practicing dentistry by equipping an office, advertising or permitting it to be done by sign, card, circular, hand-bill, newspaper or otherwise, that he can or will attempt to perform dental operations of any kind, treat diseases or lesions of the human jaw, or replace lost teeth by artificial ones, or attempt to correct malposition thereof, or who shall for a fee, salary or other reward, paid or to be paid, either to himself or to another person, perform dental operations of any kind, treat diseases or lesions of the human jaw or teeth, or replace lost teeth by artificial ones, or attempt to correct malposi-

tions thereof. The foregoing provisions of this section shall not apply to students enrolled in and · regularly attending any dental college, who perform acts of dentistry in the pursuit of clinical advantage under the drect supervision of a preceptor or a licensed dentist, during the perior of their enrollment; and the provisions of this act shall not prevent any legally licensed resident physician or surgeon from extracting teeth or to prevent any person from using any domestic remedy for relief of pain." The evidence of the state tended to prove that certain persons received treatment in the Lakota Block, on Phillips avenue, in Sioux Falls, during the period alleged in the information; that the place where such treatments were received consisted of three rooms, occupied by Cannon, the absent witness, the accused, and the latter's wife; that one of these rooms was used for the reception of patients, and in which Mrs. Carlisle kept the accounts, collected fees, and gave receipts; and that there was a dental · chair in each of the other rooms, one used by Cannon, the other by the accused. Copies of the articles of incorporation and by-laws of the "Carlisle Dental College," offered by the defendant, were excluded. The only persons named as incorporators are Cannon, the absent witness, the accused, and the latter's wife. The by-laws, purporting to have been adopted January 8, 1912, provide that Cannon shall be president, the, defendant vice president, and the latter's wife secretary-treasurer for one year from January 1, 1912. In the book containing the by-laws the following entries appear under the headings, "Enrollment of Students," "Names," "Residences," "Dates": "Carlisle, C. L., Sioux Falls, S. D., Jan. 3 1912. Carlisle, Marian E. Sioux Falls, S. D., Jan. 3, 1912.'" It was shown that the persons so described as enrolled students were the accused and ·his wife. No evidence was offered tending to prove that any other persons had ever been enrolled, that the alleged college had ever been advertised as such, or that any. person had ever received instruction as a student· in connection therewith. The accused testified that he had practiced dentistry in Sioux Falls for eight . years preceding January 1, 1912. His wife testified that during that time she was in charge of the clerical part of her husband's business. All the offered. evidence, viewed in the light most favorable to the defendant, merely. tended to prove the exitence of a corporation clothed with. power to establish a dental

college.   Clearly the existence of such a corporation is neither essential to nor evidence of the existence of a college.   The fact to be proven was the existence of a dental college..   It was wholly immaterial whether it was conducted by a corporation, partnership, or individual.   Hence the documentary evidence relating to the creation of the corporation was properly excluded.   If there had been any evidence of an existing dental college—an institution of that character in actual operation—there might have been an issue for the jury as to whether it was being conducted in good faith, or merely as a device to evade the law.   But, as the evidence wholly failed to disclose a college of any description in actual operation, it was neither necessary nor proper to inquire into the motives which prompted the incorporators to form the corporation.

[11] Defendant was asked the following question, to which the state objected, and the objection was sustained:   "I will ask you to state whether or not during all this time, having especial relation to the times when work was done for Connor, Delaney, Brower, and Johnson, Dr. Cannon had charge and supervision of the dental offices in question?"   This testimony, and more to the same effect, was properly excluded.   The fact that defendant's work was done under the direct supervision of a licensed dentist constituted no defense, in absence of evidence tending to prove that the defendant at the time was a student enrolled in and regularly attending a dental college.

[12, 13] Though requested to instruct the jury that the defendant "should not be convicted for any period during which he was enrolled as a student in and regularly attending a dental college, and in performing said acts of dentistry was in the pursuit of clinical advantages under the direct supervision of a preceptor or a licensed dentist during the period of such enrollment," the court did not allude to the subject in its charge.   The exception respecting enrolled students having been negatived by appropriate allegations in the information, the question presented by the court's refusal to instruct as requested is one of evidence, not of pleading.   When, as in the case at bar, the subject-matter of a negative averment in an indictment or information relied upon by the defendant as a justification or excuse lies peculiarly within his knowledge, the general rule is that the burden of proof as to such

justification or excuse is on the defendant. Territory v. Scott, 2 Dak. 212, 6 N. W. 435; People v. Boo Doo Hong, 122 Cal. 606, 55 Pac. 402; Cleary v. State, 56 Ark. 124, 19 S. W. 313; Williams v. People, 121 Ill. 84, 11 N. E. 881. By the "burden of proof," as thus employed, is meant the duty of producing evidence in order to meet a prima facie case, not the quantum of evidence required to establish the truth of any given proposition or issue. 5 Am. & Eng. Enc. 22. The presumption of innocence is only one of numerous rules of evidence and procedure applicable to criminal actions.

[14] "On the trial of an indictment or information for any other offense than libel, questions of law are to be decided by the court, and questions of fact are to be decided by the jury; and, although the jury have the power to find a general verdict, which includes questions of law as well as of fact, they are bound, nevertheless, to receive as law what is laid down as such by the court." Rev. Code Crim. Proc. § 354. While it is the province of the jury to determine whether the required facts have been established, it is for the court to determine what facts constitute the crime charged, by what evidence such facts may be established, and what issues shall be considered. In the case at bar the fact that the accused was without a license was conclusively established. Having failed to produce any evidence tending to prove that he was an enrolled student, the burden being on him to produce some such evidence in order to raise that issue, the only material issue to be determined by the jury was the one submitted by the court, namely, whether, at the place, and within the period alleged, he was performing the acts forbidden by the statute. It might have been better form to have stated the exception as to enrolled students and the rule relating to the defendant's failure to produce any competent evidence tending to prove such exception, but had the suggested course been pursued the result would have been the same; the jury being charged, in effect, to disregard the exception In absence of any evidence produced by the state or the defendant tending in any degree to establish the exception, the learned trial court did not err in excluding that issue from the consideration of the jury.

The entire record has received thoughtful attention. Finding no reversible error, the judgment of the circuit court is affirmed.